**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **A.L.**

**No. 21-0369** (Kanawha County 20-JA-36)

## MEMORANDUM DECISION

Petitioner Mother K.C., by counsel Elizabeth G. Kavitz, appeals the Circuit Court of Kanawha County's April 15, 2021, order denying her request for an improvement period and terminating her parental rights to A.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Sharon K. Childers, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her request for an improvement period and terminating her parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2020, the DHHR filed an abuse and neglect petition against petitioner alleging substance abuse and that petitioner and the child had been missing since November of 2019 after residing at the grandparents' home. The DHHR alleged that the child's maternal grandparents filed a missing person report in January of 2020 and that the Kanawha County Sheriff's Department was investigating. According to the petition, the grandparents had filed a guardianship petition for the child in family court, which was transferred to circuit court and the circuit court ordered a ratification for emergency custody to be filed. The DHHR further alleged that the child disclosed to a peer that the father punched her in the stomach on at least one occasion.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Finally, the DHHR alleged that the parents failed to provide the child with the necessary food, clothing, supervision, and housing at times since the child's birth by failing to provide the child with financial support during at least some periods of the child's life.

The circuit court held a preliminary hearing in February of 2020 wherein petitioner did not appear but was represented by counsel. At the hearing, the DHHR advised the court that petitioner was "still on the run with the minor child and the [DHHR] has been unable to locate them." The court granted the DHHR legal and physical custody of the child, upon locating the child.

After the preliminary hearing, petitioner returned to West Virginia. Petitioner was located at the county courthouse attempting to file domestic violence petitions against the child's father and her own parents. At that point, the DHHR took physical custody of the child. Thereafter, the circuit court held an adjudicatory hearing in March of 2020, wherein the court heard arguments on a motion from a Legal Aid of West Virginia attorney to intervene on behalf of petitioner. The Legal Aid attorney said that she specialized in human trafficking and related resources. The DHHR and guardian objected to her presence at the hearing, citing the rules of confidentiality under West Virginia Code § 49-5-101. After considering the arguments, the court ultimately denied the motion to intervene. The guardian presented a confidentiality order to the court, which was signed and reminded the parties of the "confidential nature of the proceedings." The circuit court also heard arguments on a motion to intervene from the child's grandparents. The DHHR informed the court that it intended to amend the petition to add the grandparents as respondents. As such, the court provisionally granted the grandparents' motion to intervene. The court also ordered that the parents and grandparents submit to parental fitness evaluations and that petitioner also participate in a psychiatric evaluation. Petitioner moved for supervised visitation with the child, which the court denied.

In May of 2020, the psychologists released their forensic psychological evaluation, which noted that A.L. participated in a Child Advocacy Center ("CAC") interview in November of 2019 at the Charleston Area Medical Center. During her CAC interview, the child disclosed instances of abuses. Specifically, A.L. revealed that she had been locked in a room with no lights, whipped for spilling milk, and hit with a pan by the father. The child further disclosed that the father pulled down her pants and scratched her genitals. After the CAC interview, petitioner fled West Virginia with the child. According to the evaluation, petitioner and the child resided at one point in New Jersey. Once in New Jersey, the Department of Child and Families completed an assessment on petitioner and the child. The assessment indicated that petitioner claimed to be involved in human trafficking and that A.L. had been sexually abused by her maternal grandparents and father. Petitioner also claimed that her life was in danger and that human traffickers had drugged her with Valium. According to the evaluation, A.L. disclosed to a doctor performing an evaluation in New Jersey that she missed her friends at school in West Virginia. A.L. also informed the evaluator that her father hit her on several different occasions.

Next, the psychologists conducted their own interview with the child. According to the evaluation, A.L. struggled to provide linear, detailed accounts of the events she alleged occurred. In one instance, the child claimed to have been sexually abused at an event where there were a number of other people gathered. When asked why the others did not see the abuse, she said the perpetrator told them to "[l]ook over there," while pointing in another direction, fooling the people

into looking away while the abuse occurred. The child also appeared focused on a news interview with her father after he reported her missing. According to the evaluation, the foster mother said the child repeatedly asked her to locate and show her the video, and it appeared that she had never seen the video but talked about it as though she had. After interviewing her at length and conducting a full evaluation, the examiners concluded that A.L. may no longer be able to discern what happened from what she had been told by petitioner.

Finally, the psychologists interviewed petitioner, who stated that she fled West Virginia in November of 2019 after her own father had sexually assaulted her and that she had escaped from people who were trafficking her. Petitioner indicated that her mother had threatened her with mental health treatment. Petitioner acknowledged that she had been living with her parents in October and November of 2019 before fleeing the state with the child. Petitioner stated that A.L. told her she had been sexually abused by the father. Petitioner acknowledged that she failed to contact law enforcement or CPS after the allegations but that she took A.L. to a counselor, who made a referral to CPS. After the referral, petitioner took A.L. to the Charleston Area Medical Center for an evaluation. Petitioner stated that A.L. disclosed sexual abuse by the father during her CAC evaluation. However, petitioner denied knowing that the child had been abused. Petitioner stated that she received assistance in New Jersey through a human trafficking victim's organization, including placement in a shelter, clothing, and counseling. While in placement at the shelter, A.L. was molested in a restroom late at night. Petitioner asserted that her parents had hired a private detective to attempt to locate her at the shelter. Petitioner also claimed that she was on the news as a result of her disappearance and had missed several hearings in West Virginia, leading her parents to file a missing person's report. Petitioner acknowledged to the evaluators that she returned to West Virginia in January of 2020, claiming that she had been located at the shelters in New Jersey and did not wish to go into a witness protection program. Petitioner further claimed that her parents had sexually abused her and had paid the human trafficking organization to keep her so the grandparents could take the child. Petitioner also reported that A.L. was in the primary care of the grandparents from 2016 to 2018 and was "back and forth" between her care and the grandparents' care in 2018 and 2019. Petitioner claimed to take sole care of the child after May of 2019. After reviewing the allegations in the petition with the evaluators, petitioner acknowledged that she was out of the state during the time period listed in the petition. Petitioner also admitted to occasionally using methamphetamine since 2017 and that she was forced to use Valium by human traffickers who took her hostage.

In regard to her mental health, petitioner denied ever receiving inpatient mental health treatment or residential substance abuse treatment. However, petitioner acknowledged participating in outpatient substance abuse treatment for methamphetamine addiction in 2019 and intensive outpatient treatment where she recounted "repressed memories" of sexual abuse by her parents. Petitioner further stated that she suffered from hallucinations as a result of her repressed memories of abuse. Petitioner indicated that she was taking prescribed medication for her post-traumatic stress disorder diagnosis.

The circuit court held the continued adjudicatory hearing in August of 2020 wherein petitioner moved to stipulate to abusing and neglecting the child. The court questioned petitioner under oath as to her stipulation and, after questioning, did not accept petitioner's stipulation. The court cited "ongoing concerns with [petitioner's] mental health issues." Petitioner's counsel

objected to the court's refusal to accept petitioner's stipulation. The DHHR moved to continue the hearing to determine if petitioner "will be able, in the foreseeable future, to overcome her mental health issues." The circuit court also ordered therapeutic reunification between the child, the grandparents, and the father. The circuit court continued the hearing and, upon request by counsel for petitioner, granted her motion for a guardian to be appointed for petitioner.

In November and December of 2020, the circuit court held hearings wherein petitioner moved for a preadjudicatory improvement period. In support of her motion, petitioner presented the testimony of her psychiatrist who testified that petitioner was motivated and making therapeutic progress. The psychiatrist also diagnosed petitioner with post-traumatic stress disorder. Next, a psychologist testified that she interviewed then six-year-old A.L. and diagnosed the child with trauma and stressor-related disorders. The psychologist explained that the child was affected behaviorally and emotionally by being removed from her home by petitioner, taken out of state, and not understanding what was happening. The psychologist further testified that she interviewed the child, who seemed confused, and that petitioner likely coached the child, which affected the child's ability to distinguish between fantasy and reality. Finally, another psychologist testified that she interviewed petitioner. That psychologist testified that petitioner did not exhibit any symptoms of post-traumatic stress disorder, as petitioner claimed to have been diagnosed with. The psychologist testified that petitioner exhibited paranoia-based thinking, as well as a recent history of substance abuse and erratic behaviors. The psychologist further testified that petitioner's credibility and mental well-being were in significant doubt.

The next month, the circuit court held another hearing wherein petitioner renewed her motion for a preadjudicatory improvement period. The DHHR and guardian again objected to the motion, which the court denied. After denying the motion, the DHHR put on evidence that petitioner left West Virginia with the child for several months, moving from shelter to shelter. The DHHR presented evidence that during one move, the child was sexually assaulted in a shelter bathroom while in petitioner's care. In support of her motion for an improvement period, petitioner's counsel maintained that petitioner was running from human traffickers, the child's father, and her own parents, who she claimed had sexually abused her for years.

In light of evidence presented over several adjudicatory hearings, the circuit court found that petitioner has "severe mental health issues that impacted her ability to parent and caused severe emotional trauma to the [] child." The court detailed that petitioner "absconded with the child for several months, without a plan, that resulted in a dramatic upheaval in the child's life." The court also found that petitioner ran with the child to New Jersey and Ohio, moving from shelter to shelter, which led to the child being sexually assaulted. As a result, the circuit court found that petitioner was an abusing and neglectful parent. Petitioner moved for a post-adjudicatory improvement period and supervised visitation, which the court denied. The court did, however, grant petitioner's motion for the DHHR to provide parenting services.

The circuit court held multiple dispositional hearings in March and April of 2021. At one hearing, a DHHR case manager testified that at the time of the petition's filing, petitioner had taken the child outside of the state and both had been missing for approximately two months. The DHHR also put on evidence that, despite granting petitioner services, petitioner failed to participate in parenting services. Specifically, petitioner cancelled all scheduled appointments with service

4

providers in December of 2020 and did not respond to attempts from providers in January and February of 2021. During that time, petitioner quit her job, ceased participating in therapeutic treatment services, left her home in West Virginia, and moved to Texas. The DHHR reported that petitioner was staying in a sober living home in Texas that does not permit children. The DHHR presented evidence that petitioner failed to provide an explanation as to why she left West Virginia and instead cited "human trafficking events" without any evidence to support such accusations. Finally, petitioner testified that she had moved to Texas to escape human traffickers who had broken into her apartment in West Virginia and assaulted her. Petitioner stated that there was a police report and investigation into the incident, but she did not have the report and could not recall which agency investigated the alleged incident. Petitioner reported that she was unable to participate in services due to trauma stemming from the alleged break-ins. Upon questioning, petitioner did acknowledge she suffered from mental illness, including delusions. Petitioner maintained that she wanted to visit with A.L. and maintain a relationship with the child.

After the presentation of evidence, the circuit court found that petitioner's ongoing mental health crisis was a barrier to reunification with the child. The court also found that petitioner moved out of state; made no effort to participate in parenting services; remained unstable; was living in a home where children are not allowed; and ceased treating her mental health. Ultimately, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the child to terminate petitioner's parental rights. The circuit court's April 15, 2021, dispositional order reflected this termination.[2] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying her motion for a post-adjudicatory improvement period because she acknowledged her mental health issues and their impact upon her ability to parent and took initiative in seeking treatment for those issues.

---

[2]The father is currently participating in an improvement period, and his parental rights remain intact. The permanency plan for the child is reunification with the father.

Specifically, petitioner argues that her acknowledged mental health issues required the court and DHHR to proceed with plans for remediation commensurate with the Americans with Disabilities Act ("ADA"). She asserts that West Virginia Code § 49-4-604(c)(5) requires circuit courts to consider whether the DHHR provided reasonable accommodations when the court finds that the parent is "presently unwilling or unable to provide adequately for the child's needs." Petitioner also argues that she offered "ample evidence" of her likelihood of full participation in an improvement period through the testimony of her treating psychiatrist, as well her own testimony regarding her housing and employment. In light of these claims, she argues that the circuit court erred in failing to grant her a post-adjudicatory improvement period. We disagree.

This Court has held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Here, petitioner failed to correct the conditions of abuse and neglect at issue in the proceedings, despite the provision of services. The record indicates that petitioner failed to participate in scheduled parenting services and cancelled all appointments scheduled in December of 2020. Petitioner also failed to communicate or respond to calls from service providers in January and February of 2021. This is despite the fact that at least one service provider made numerous attempts to locate and assist petitioner during the proceedings. Although petitioner references her own testimony on housing and employment, she quit her job, stopped participating in treatment services, abandoned her home in West Virginia, and moved to an out-of-state facility that bars children. Accordingly, it is clear to this Court that the circuit court did not err in denying any of petitioner's motions for improvement periods, as an improvement period would have been an exercise in futility and not in the best interest of the child.

Next, we find that the circuit court did not violate the ADA in denying petitioner's motions for an improvement period. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. Petitioner argues that her "disabling diagnoses from both treaters and evaluators" remained the focus of the circuit court proceedings and formed the basis of the decision to deny her an improvement period, declining to accept her stipulation to abuse and neglect of the child, and appointment of a guardian ad litem for her. Petitioner notes that West Virginia Code § 49-4-604(c)(5)(C) provides that the circuit court shall set forth in its order, should it find that the parents are presently unwilling or unable to provide adequately for the child's needs, "[w]hether the [DHHR] has made reasonable accommodations in accordance with the [ADA] . . . to parents

6

with disabilities in order to allow them meaningful access to reunification and family preservation services." *In re B.W.*, 244 W. Va. 535, 854 S.E.2d 897, 900 (2021).

Petitioner's argument centers on the factors that the circuit court is required to include in its order if it first finds that a parent is "presently unwilling or unable to provide adequately for the child's needs." *See* W. Va. Code § 49-4-604(c)(5). However, petitioner acknowledges on appeal that the circuit court did not make that finding in this case. Rather, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of parental rights was in the children's best interests, which is the requisite finding to terminate a parent's parental rights under West Virginia Code § 49-4-604(c)(6). West Virginia Code § 49-4-604(c)(6) does not require the circuit court to include the same findings as West Virginia Code § 49-4-604(c)(5), and, therefore, we find no error in the circuit court's omission of this finding.

Further, petitioner ignores the fact that she failed to participate in many of the offered services, quit her job, stopped participating in treatment services, and moved to an out-of-state facility that bars children. Petitioner cites to nothing in the record that shows she was denied an improvement period "by reason of [her] disability." While petitioner argues that her diagnosis of post-traumatic stress disorder, made by her psychiatrist during the proceedings, would provide her protection under the ADA, the DHHR presented psychologist testimony that found petitioner did not have post-traumatic stress disorder. Petitioner also fails to explain how her alleged impairment "substantially limits one or more major life activities." 42 U.S.C. 12102(1). Moreover, petitioner fails to cite to the record where this argument was raised before the circuit court. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, we find no merit to petitioner's argument.

Next, petitioner argues that a less-restrictive alternative to the termination of her parental rights should have been employed. Petitioner claims that concurrent planning is necessary to ensure that permanency is achieved as quickly as possible for the child and that the DHHR failed to do so. Petitioner also argues that the circuit court erred in terminating her parental rights based on events "directly—or sufficiently—connected to [her] disability" and on pretextual assumptions about how she may act as a result of her disability. Petitioner argues this is a denial of her right to equal protection. We have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011).

7

First, petitioner is incorrect in her assertion that the DHHR failed to conduct permanency planning for the child. The permanency plan filed by the DHHR reflects that reunification was the primary permanency plan with a concurrent permanency plan of adoption, in the event that reunification of the child was unsuccessful. Next, petitioner's parental rights were terminated as a result of her actions throughout the proceedings—unconnected to an alleged disability. While it is true that petitioner's ongoing mental health issues were a barrier to reunification, petitioner made no effort to participate in parenting services, removed herself from mental health treatment, and moved out-of-state. Petitioner's blanket statement that the circuit court terminated her rights "based on pre-textual assumptions about how [she] may act" is unfounded by the record on appeal. As noted above, the evidence included witness testimony that petitioner failed to follow through with the rehabilitative services provided to her and that evidence was sufficient to support termination of her parental rights. Accordingly, we find no error in the circuit court's termination of her parental rights.

Lastly, because the proceedings in circuit court regarding the father are ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child

is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 15, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton